# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM T. NEARY, United States Trustee, ) | |
| ) | Case No. 08 C 6543 |
| Plaintiff-Appellee, ) | Judge Joan B. Gottschall |
| ) | |
| v. ) | |
| ) | On appeal from: |
| NICHOLAS STAMAT AND PENNY STAMAT, ) | Adv. Pro. No. 07 A 01278 and |
| ) | Case No. 07 B 13379 |
| Defendants-Appellants. ) | |

## MEMORANDUM OPINION & ORDER[1]

Appellants Nicholas Stamat and Penny Stamat filed a joint voluntary Chapter 7 Bankruptcy Petition on July 26, 2007. Dr. Stamat is a medical doctor, and Mrs. Stamat has a bachelor's degree in math and accounting and handled the billing for her husband's medical practice. Appellee William T. Neary, as United States Trustee, filed a complaint objecting to the discharge of the Stamats' debt under 11 U.S.C. §§ 727(a)(2), (4), and (5). After a bench trial, the Bankruptcy Court found that the Stamats' debt was not dischargable pursuant to each of the three bases advanced by the Trustee. *Neary v. Stamat (In re Stamat)*, 395 B.R. 59 (Bankr. N.D. Ill. 2008). The Stamats appeal that ruling.

The Stamats have a heavy burden. They must show that each of the three statutory bases for denying the discharge were legally erroneous, for only one basis is necessary to deny discharge. § 727(a); *In re Krehl*, 86 F.3d 737, 744 (7th Cir. 1996). A district court has appellate jurisdiction under 28 U.S.C. §§ 158(a)(1) and (c)(1). Questions of fact are reviewed under a clearly erroneous

---

[1] Oral argument was requested by appellees. After review of the briefs and record, and after asking for additional briefing on one issue, the court finds that oral argument is not needed. The facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument. Fed. R. Bankr. P. 8012.

standard, while questions of law are reviewed *de novo*. Fed. R. Bankr. P. 8013; *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004). Because the Stamats have not met their burden in showing that the Bankruptcy Court's ruling under section 727(a)(4) was erroneous, the other bases need not be considered.

Under section 727(a)(4)[2] the Trustee must establish by a preponderance of the evidence that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Clean Cut Tree Serv. v. Costello (In re Costello)*, 299 B.R. 882, 899 (Bankr. N.D. Ill. 2003); *see also Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1290 (7th Cir. 1987).

"A debtor's petition, schedules, statement of financial affairs, statements made at a § 341 meeting,[3] testimony given at a Federal Rule of Bankruptcy Procedure 2004 examination,[4] and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4)."

---

[2] The court shall grant the debtor a discharge, unless—
. . .
(4) the debtor knowingly and fraudulently, in or in connection with the case—
    (A)    made a false oath or account;
    (B)    presented or used a false claim;
    (C)    gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
    (D)    withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]
11 U.S.C. § 727(a)(4).

[3] A section 341 meeting is convened by the Trustee. 11 U.S.C. § 341. During a section 341 meeting, the debtor submits to questions from the Trustee and the debtor's creditors. § 343.

[4] An examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure is similar to a section 341 meeting in terms of scope and topic, but is ordered by the court after motion from a party of interest. Fed. R. Bankr. P. 2004.

*Structured Asset Serv. v. Self (In re Self)*, 325 B.R. 224, 245 (Bankr. N.D. Ill. 2005) (citations omitted, footnotes added). Where schedules or other materials contain omissions or representations with an intent to mislead creditors as to the debtor's financial condition, the requirements of section 727(a)(4) are satisfied. *See John Deere Co. v. Brohom (In re Broholm)*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004). The debtor must disclose all ownership interests in any property, for Trustees and creditors "are entitled to honest and accurate signposts on the trail showing what property has passed through the debtor's hands during the period prior to his bankruptcy." *Costello*, 299 B.R. at 899 (citations omitted). "Complete financial disclosure is 'a condition precedent to the privilege of discharge.'" *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 745 (Bankr. N.D. Ill. 2004) (quoting *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 359 (Bankr. N.D. Ill. 2001)).

Every failure to disclose will not necessarily justify a bar to discharge under § 727(a)(4), for the disclosure must be material. Yet as the number of individually insignificant omissions mounts, "there comes a point when the aggregate errors and omissions cross the line past which a debtor's discharge should be denied." *Costello*, 299 B.R. at 899. Furthermore, "[t]he cumulative effect of a number of false oaths by the debtor with respect to a variety of matters establishes a pattern of reckless and cavalier disregard for the truth by the debtor." *Cmty. Bank of Homewood-Flossmoor v. Bailey (In re Baily)*, 145 B.R. 919, 928 (Bankr. N.D. Ill. 1992) (citations omitted). "[I]f a debtor's bankruptcy schedules and statements indicate that the debtor is recklessly indifferent to the truth, the objecting creditor does not have to offer any additional evidence of fraud." *Costello*, 299 B.R. at 900. "The intent determination often will depend upon a bankruptcy court's assessment of the debtor's credibility, making deference to the [bankruptcy] court's finding particularly appropriate." *Krehl*, 86 F.3d at 743 (citations omitted); *see also In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) ("Special deference must be accorded to credibility determinations 'for only the trial judge can be

3

aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'") (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)); *Carini v. Matera (In re Matera)*, 592 F.2d 378, 380 (7th Cir. 1979) (reckless disregard finding reviewed under clearly erroneous standard).

The Bankruptcy Court cited numerous omissions from the Stamats' petition and schedules filed in support of their bankruptcy. The omissions included relatively minor assets and interests, including the ownership of two service revolvers and that Dr. Stamat was employed part-time as a police officer (although the income from the part-time job was indirectly disclosed as an aggregate report of business income). *Stamat*, 395 B.R. at 73–74, ¶ 20. The Bankruptcy Court ruled that these omissions were neither material nor intentionally omitted, *id.*, though it also noted that these examples were part of a broader and inexcusable pattern of omissions. *See id.* at 74.

The Bankruptcy Court also referenced omissions of "unidentified and undisclosed assets and the disposition of the Defendants' property, especially the disappearance of equity from their second home during the two years before the bankruptcy." *Id.* at 74, ¶ 25(a). Examples of unidentified and undisclosed assets included the failure to list the following in response to Question 18 of their Statement of Financial Affairs, which inquires about business interests possessed within the past six years:[5] (1) an interest in Dr. Stamat's medical practice, Stamat Pediatrics, LLC, f/k/a DeStefano and Stamat LLC, *id.* at 65 ¶ 21; (2) an interest in On Time Billing LLC, a billing practice maintained by

---

[5] Question 18 reads: "If the debtor is an individual, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time with six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case."

4

Mrs. Stamat, *id.* at 65 ¶ 22;[6] (3) a former interest in Meyer Medical Physician Group Ltd., with which Dr. Stamat had practiced medicine until approximately 2001 when Meyer Medical filed for bankruptcy, *id.* at 65 ¶ 23, 69 ¶ 65; (4) a former interest in 4425 E. 63rd Medical Center, which was an investment that held title to the building where Meyer Medical operated, and which was sold in 2003, *id.* at 65 ¶ 24, 69 ¶¶ 66, 67; (5) a former interest in Hoffman/Elk Grove Physicians Group Ltd., which was an investment made shortly before Meyer Medical filed for bankruptcy, *id.* at 65 ¶ 25, 69 ¶¶ 68–69; and (6) a former interest in Trailhead Land Investment, LP, and Eagle Crest Gold Club, Ltd. Partnership, *id.* at 66 ¶¶ 37–38.

The Stamats object that the Trailhead Land Investment, LP, and Eagle Crest Gold Club, Ltd. Partnership investments should not be considered because although these were both limited partnerships, the Stamats owned less then five percent of the voting equity in these investments. The Stamats make this argument by ignoring the plain language of Question 18, which states that any business in which the debtor was a "partner" must be listed regardless of the amount of voting equity owned, and pointing instead to a general definition of "in business" found in the first page of the Statement of Financial Affairs Official Form, which explicitly prohibits a "limited partner" status from the definition of being "in business."[7,8] This argument is erroneous. First, the Official Form

---

[6] However, both Stamat Pediatrics and On Time Billing were disclosed elsewhere in the petition. *See Stamat*, 395 B.R. 66 ¶ 39 (noting disclosure in Schedule B to the Statement of Financial Affairs).

[7] Official Form 7 of the Statement of Financial Affairs states on page 1:
A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity,

5

directs that this definition of "in business" is to be used to determine whether a debtor must answer questions 19 to 25. *See* Stmt. of Fin. Affairs Official Form 7 at 1 ("Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25."). The allegation is that the Stamats omitted these limited partnerships from Question 18, not from Question 19 to 25. Second, the phrase "in business" does not appear in Question 18, although the title of Question 18 is similar: "Nature, location and name of business." Third, the "in business" definition appearing on the first page of the Official Form states that for the purposes of the phrase "in business," (which again, is used to identify whether the debtor needs to answer questions 19 to 25), a debtor is to include any situation where the debtor is "a partner, other than a limited partner, of a partnership." This "other than a limited partner" qualifier indicates what is otherwise obvious: the term "partner" would normally be assumed to *include* the status of being a limited partner. If this were not so, then there would be no reason to insert the qualifier "other than a limited partner" in the definition. Yet when the text of Question 18 is considered, there is no such caveat altering the normal meaning of the term partner. Rather, Question 18 directs the debtor to "list [information for] all business in which the debtor was [a] . . . partner, or . . . partner in a partnership . . . ."[9] Because no caveat was included, the plain meaning would encompass limited partners.

---

       other than as an employee, to supplement income from the debtor's primary employment.

*See* http://www.uscourts.gov/rules/BK_Forms_1207/B_007_1207f.pdf.

[8] The Stamats did not even use Official Form 7, and there is no indication they ever saw the "in business" definition when completing their petition. Nevertheless, the Trustee attempted to use the same definition of "in business" against the Stamats in the proceedings below, albeit for a different proposition, *see Stamat*, 395 B.R. at 67 ¶ 41(b), and thus it would now be inappropriate to prohibit the Stamats from relying on this definition if it can assist them.

[9] The full text appears *supra* at footnote 5.

The Stamats also object that the Bankruptcy Court appeared to assume that some of these investments should have been listed on the Stamats' Schedule B, and that this assumption served as a rationale to diminish the Bankruptcy Court's concerns over the ambiguity of the meaning of Question 18 and the "in business" definition. *See Stamat*, 395 B.R. at 76.[10] Schedule B requires debtors to list only personal property, and there is nothing in the Schedule which indicates that personal property no longer in the debtor's possession or control must also be listed. Since many of these businesses were disposed of or lost prior to the bankruptcy petition being filed, the businesses must be listed in response to Question 18 (because Question 18 inquires into businesses in which the debtor had an interest over the past six years, but not necessarily currently), but would not have to be listed on Schedule B (because the investment is no longer a personal property).

The Stamats' argument regarding the inapplicability of Schedule B appears correct, yet no consequence flows from this observation. The Bankruptcy Court equivocated regarding the failure to list these limited partnerships in response to Question 18, and shored up its resolve by noting the failure to list them on the Schedule B; it did not, however, hold that it would have reached a contrary result absent its interpretation of Schedule B. *See id.* Furthermore, the Bankruptcy Court was considering only two limited partnerships in this context; there were four other businesses that the Stamats failed to disclose in response to Question 18, as identified above. And most important, on appellate review this court is affirming the conclusion that the limited partnerships should have been listed on Question 18, mooting any reliance on the propriety of the Schedule B.

---

[10] "Based on ambiguity of the definitions and instructions, we might not attribute fraudulent intent to Defendants in this case for their failure to list the partnership interests on their Statement of Financial Affairs, were it not for their failure to list these partnership and membership interests as personal property assets on Schedule B of their bankruptcy petition." *Stamat*, 395 B.R. at 76.

The Stamats also failed to disclose other items in their petition. They omitted as an asset a counterclaim in pending litigation, though the potential amount of the counterclaim is unknown. *Id.* at 66–67 ¶ 40.[11] The Stamats failed to disclose a transfer of property within the past two years, including $10,000 used to settle pending litigation. *Id.* at 65 ¶ 17, 66 ¶¶ 31–32.

The Stamats also omitted two home refinancings which generated cash in excess of $90,000. *Stamat*, 395 B.R. at 65 ¶ 20, 66 ¶¶ 35, 36. The Stamats contend on appeal that this omission cannot be held against them because the relevant question in the Statement of Financial Affairs inquires into transfers not in the ordinary course of business only,[12] and they allege that the Bankruptcy Court determined that these refinancings were in the ordinary course of business. *See id.* at 68 ¶ 58 ("The refinancing and the use of the proceeds therefrom in the medical practice, was done in the ordinary course of business."). This court cannot agree. The Stamats take the finding out of context; the Bankruptcy Court stated that the Stamats *so testified* at trial; it does not follow that the Bankruptcy Court necessarily agreed with this testimony. *See id.* at 67 (using title, "Defendants' Testimony at Trial"). Indeed, in its legal findings, the Bankruptcy Court faulted the Stamats for failing to disclose the refinancings, a legal finding that would have to be in error if the Bankruptcy Court thought that the refinancings did not have to be disclosed. *See id.* at 66 ¶¶ 35–36, 71 ¶ 14(b) ("Defendants also failed to identify . . . transfers of their property interests made within two years before filing the

---

[11] The Stamats contend on appeal that the existence of a counterclaim was never proven by the Trustee. The court disagrees; the *value* of the counterclaim remains unknown, but its existence was confirmed by Mrs. Stamat during the hearing in Bankruptcy Court. *See* May 22, 2008 Tr. 70:24–71:3 ("Q: Are you aware of whether or not you and Dr. Stamat have asked the court to find their mortgage invalid? A: Well, we were suing them since 2001, so I guess in there we were trying to do that.").

[12] Question 10 of the Statement of Financial Affairs states: "List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, either absolutely or as security within two years immediately preceding the commencement of the case."

bankruptcy petition, i.e., two refinancings of their second home (for which they received more than $90,000) . . .").

Furthermore, it would have been clearly erroneous to conclude that these refinancings were in the ordinary course of business. The term "ordinary course of business" refers to "normal commercial and financial relationships," such as, but not necessarily limited to, "recurring, customary credit transactions." *Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 642 (7th Cir. 2003). The payment of day-to-day living expenses is certainly an ordinary and normal transaction. *See Roberts v. Oliver (In re Oliver)*, Adversay No. 08-3129, 2009 WL 1475046 (Bankr. E.D. Tenn. May 22, 2009). If the Stamats had refinanced to pay their personal expenses only, their argument would be stronger. But that is not the case. The refinancing served an additional purpose: to pay the expenses of Stamat Pediatrics, which was going through a difficult period. *See* May 22, 2008 at 102–04. There are no records of the transfer of money from the Stamats' personal account to the accounts of the legally separate business, Stamat Pediatrics, save periodic checks written from the Stamats's personal account to either Stamat Pediatrics, or simply payable to "cash." *Id.* at 99–101; *Stamat*, 395 B.R. at 68 ¶ 56 ("The Stamats provided the U.S. Trustee with all their available checking account records which reflected the use of some proceeds from the refinancing, in a disjointed and fragmented fashion."). The Stamats owned and operated Stamat Pediatrics, but as the Stamats stress in their briefs, Stamat Pediatrics is a separate legal entity. The court cannot agree that refinancing a personal property, and then transferring the resulting equity to a separate legal entity can be considered a normal or recurring transaction. The refinancings were not done in the ordinary course of the Stamats' financial affairs, and they should have been disclosed.

The Bankruptcy Court finally criticized the Stamats for how they reported their business income. *See id.* at 71–72 ¶ 14(c). Question 1 of the Statement of Financial Affairs asks the debtor

9

to "[s]tate the gross amount of income the debtor has received from employment, trade, or profession, *or from operation the debtor's business*, including part-time activities either as an employee or in independent trade or business . . ." *See id.* at 67 ¶ 41(b) (emphasis added). When the petition was filed, the Stamats operated two businesses, Stamat Pediatrics, LLC, and On Time Billing, LLC, both of which were single member limited liability corporations. In response to Question 1, the Stamats listed $53,309 as income from business operations in 2006. The gross income of Stamat Pediatrics, LLC, in 2006 was $265,012, the gross income of On Time Billing, LLC in 2006 was $22,188, and the personal income received by the Stamats from the two businesses was reported on their income tax return as $20,559.[13] The Bankruptcy Court concluded that since these two corporations are both sole member limited liability corporations managed by the debtors, the entire gross income for the LLCs had to be reported. The Bankruptcy Court explained, "Defendants' characterization of a limited liability company as a separate legal entity is a correct statement of state corporate law for purposes of liability, but is irrelevant for purposes of federal taxation and determining gross income. Defendants' arguments, therefore, are without merit." *Id.* at 71 ¶ 14(c). On appeal, the Stamats object to this conclusion.[14]

Neither party cites to any controlling law on how the income from a single-member limited liability corporation should be treated for purposes of Question 1 of the Statement of Financial Affairs. The Stamats insist that the key fact is that the corporation is a separate legal entity, and therefore the LLCs' gross income is of no consequence to the Stamats; only the profit the Stamats receive from the LLCs should matter. The Stamts also point out that Question 1 asks the debtor to

---

[13] This number reflects the profit received from the two corporations, after the various expenses of the corporations was deducted.

[14] This court asked the parties for additional briefing on this issue.

10

"State the gross amount of income the *debtor has received* from employment, trade or profession, or from operation of the debtor's business . . . " Stmt. of Fin. Affairs Ques. 1 (emphasis added). As the Stamats point out, they only *received* their profit from the businesses; they did not personally *receive* the total income attributable to the LLCs. Nevertheless, the conclusion by the Bankruptcy Court is also correct, at least for tax purposes; for purposes of federal tax law, the legal distinction of a single owner LLC may be disregarded. *See* IRS Publication 3402 (Rev. 3-2008) A single owner of an LLC may file a single tax return for himself and his LLCs (the LLCs being listed on a Schedule C), which the Stamats did in 2006; this is referred to as "pass-through taxation." *See Stamat*, 395 B.R. at 72 ¶ 14(c).

This court is receptive to the Stamats' arguments, but declines to resolve the particular meaning of Question 1, because even if the Stamats were only required to report their own personal profit from the LLCs, the amount they reported on their bankruptcy petition, $53,309, was substantially different from the actual amount they reported on their tax return, $20,559. The Stamats explained that the $53,309 figure came from an estimate of their likely taxable income, but the Stamats filed their bankruptcy petition a month after their tax return was finalized. *Stamat*, 395 B.R. at 72 ¶ 14(c). The Stamats contend that there is no evidence they were aware that their tax form was completed prior to their filing the bankruptcy petition, as the tax forms were prepared and signed by their accountant, not by the Stamats personally. They further argue that since they overreported their income rather than under-reporting it, there can be no showing of an intent to defraud. These facts are not dispositive. The Bankruptcy Court found that the Stamats acted with reckless indifference to the truth when they filed their petitions; the fact that they did not confirm their actual income before they filed the petition in July, 2007, even though their taxes were finished in June, 2007, supports the conclusion that they acted with reckless indifference. And although under-

reporting is obviously more severe, the court cannot agree that over-reporting of income is harmless to creditors or the Trustee. The goal is for the Statement of Financial Affairs to be *accurate*, precisely so that the Trustee and creditors do not have to carry the burden of establishing a debtor's *actual* financial situation. *See Costello*, 299 B.R. at 899. While under-reporting may be worse, over-reporting is also problematic since in either event the creditors and Trustee cannot rely on the information provided by the debtor.

From all of the above, this court is satisfied that the Bankruptcy Court's determination that the Stamats acted with reckless disregard is not clearly erroneous; there are substantial factual bases to support its finding. *See Krehl*, 86 F.3d at 743; *Weber*, 892 F.2d at 538; *Matera*, 592 F.2d at 380. Nor does the Stamats' subsequent amendments to their filings, once after the § 341 meeting (on December 7, 2007), and once shortly before the trial (on May 8, 2008), require a different result. "[A] debtor cannot excise a false oath by making subsequent corrections to his bankruptcy petition." *Costello*, 299 B.R. at 899–900. "The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive." *Id.* at 900 (quotations omitted). Because the finding of a reckless disregard is affirmed, it follows that the Stamats acted with a sufficient fraudulent intent for purposes of section 727(a)(4). *Id.*

The fifth element of section 727(a)(4) remains: whether the omissions related materially to the bankruptcy case. "A statement is considered material for purposes of § 727(a)(4) if it relates to the debtor's estate, involves the discovery of assets, or concerns the disposition of the debtor's property or his entitlement to discharge." *Costello*, 299 B.R. at 900. The Stamats' omissions were related to their estate—the omissions involved undisclosed assets, undisclosed transfers, and undisclosed prior business interests. The fact that some of these interests no longer have any

obvious value to the Trustee or the Stamats' creditors does not make the interests nonmaterial; they still "relate" to the estate regardless of their valuation. *See Palatine Nat'l Bank v. Olson (In re Olson)*, 916 F.2d 481, 484 (8th Cir. 1990). The Bankruptcy Court's finding of materiality is therefore affirmed.

The Bankruptcy Court's decision to deny discharge pursuant to § 727(a)(4) is affirmed. The remaining bases for denying discharge need not be addressed.

                ENTER:

                /s/
                JOAN B. GOTTSCHALL
                United States District Judge

DATED: September 2, 2009